UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ROGERS,

    Petitioner,

  v.

JAMES WALKER, Warden,

    Respondent.

No. C 10-0158 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed pursuant to 28 U.S.C. 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2005, after two jury trials in the San Francisco Superior Court, petitioner was convicted of robbery, burglary, assault and the second-degree murder of his friend Lawrence Kimble. Petitioner was sentenced to a total term of 41 years-to-life in state prison. The first jury convicted petitioner of robbery, acquitted him of the first-degree murder of Kimble, and deadlocked on the lesser included charges. The second jury convicted petitioner of the

second-degree murder of Kimble. Evidence presented at the first trial demonstrated that petitioner robbed a liquor store in August 2003 after beating the store owner into unconsciousness. Evidence presented at the second trial demonstrated that in an unrelated incident later that same month, petitioner stabbed Kimble to death with a knife (Ans., Ex. K. at 1–2 & 15–16). The hostility between the two men had grown over recent weeks, apparently in reaction to a rumor that petitioner had had sex with Kimble's wife Phris, who witnessed the killing (*id.* at 5 & 6–7). Petitioner testified at trial that he acted in self-defense.

As grounds for federal habeas relief, petitioner alleges that (1) the admission of evidence of his prior bad acts violated his right to due process and to the effective assistance of counsel;[1] (2) testimony by a witness that he feared petitioner should not have been admitted at trial; (3) his retrial on second-degree murder and a sentencing enhancement violated the Double Jeopardy Clause; (4) defense counsel rendered ineffective assistance by failing to raise double jeopardy objections a trial; (5) the prosecutor committed misconduct by presenting false testimony; (6) the trial court's denial of the motion to sever violated his right to due process and "compromised" his Fifth Amendment privilege against self-incrimination; (7) his right to a speedy trial was violated; (8) his right to a jury trial and to a unanimous jury was violated because one of the jurors fell asleep during trial; (9) he received ineffective assistance of trial and appellate counsel in failing to obtain transcripts necessary to substantiate a claim that his speedy trial rights were violated; and (10) the prosecutor committed misconduct in representing that they were going to conduct DNA testing of certain evidence and then failing to do so.

**STANDARD OF REVIEW**

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). A federal court may not grant a petition with respect to any claim that was

---

[1] This is a consolidation of the first, fourth and fifth claims listed in the Order to Show Cause.

2

adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. (Terry) Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254 (d)(2). The federal court must presume as correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801–06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an

3

1 independent review of the record" to determine whether the state court's decision was an
2 unreasonable application of clearly established federal law. *Ibid*.

3 If constitutional error is found, habeas relief is warranted only if the error had a
4 "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v.*
5 *Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638
6 (1993)).

## ANALYSIS

### 1. Admission of Prior Bad Acts Evidence

Petitioner testified that he acted in self-defense. The prosecutor attempted to impeach petitioner's credibility by presenting evidence that he had seven prior felony convictions. The prosecutor also presented evidence that a week before the murder petitioner cut Marsha Keaton, his paramour and Phris Kimble's sister, with a knife immediately after he argued with Lawrence Kimble (Ans., Ex. K at 28–29 & 30). Petitioner claims that the admission and presentation of such evidence violated his due process right to a fair trial and to his Sixth Amendment right to counsel. Such evidence, petitioner asserts, was prejudicial and constituted bad character and propensity evidence.

The state appellate court rejected this claim for several reasons. First, "any prejudice from the similarity of the offenses was mitigated by the minimal emphasis placed on the prior convictions at trial," the prosecutor having mentioned the prior convictions only once (*id.* at 30). Second, evidence of the knife incident was relevant to prove petitioner's motive for and intent in killing Kimble:

> Evidence about the knife-wielding incident in which [petitioner] injured Marsha's knee was highly relevant to prove [petitioner]'s motive and intent to kill Lawrence Kimble. On the night in question, just over two weeks before Lawrence was killed, Marsha heard [petitioner] and Lawrence arguing so loudly in the hallway outside [petitioner]'s apartment that their voices awakened her. Marsha testified that when [petitioner] came inside he was very upset, and he proceeded directly to the kitchen and grabbed a butcher knife from the cutlery set. In his anger, [petitioner] lashed out and — accidentally, according to Marsha — stabbed his girlfriend in the knee so severely that she had to be hospitalized. This incident demonstrates that [petitioner] was angry with Lawrence only weeks before he killed the man. It therefore served both as evidence that [petitioner] had a motive and the intent to kill Lawrence and as impeachment of [petitioner]'s story to the police that he and Lawrence had resolved their differences and remained friends after the

4

fight in which [petitioner] wielded a pen or a knife (or possibly an ice pick) to pin Lawrence to the couch

(*id.* at 32–33).

### A. Due Process

Petitioner claims that the prosecutor committed misconduct by presenting such evidence, and the trial court violated his right to due process by admitting the evidence and by failing to issue, *sua sponte*, a limiting instruction that evidence of the knife incident could not be used as propensity or character evidence. To succeed on either claim, petitioner must show that admission and use of the evidence had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Petitioner is not entitled to habeas relief on this claim. First, because defense counsel failed to object at trial, the claim is procedurally defaulted under the contemporaneous-objection rule. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991), and *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004). Second, the Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991). Because the Supreme Court has reserved this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Third, petitioner has not shown prejudice. Habeas relief may be granted only if there are no permissible inferences that the jury may draw from the evidence. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). From the prior conviction evidence, the jury could draw the permissible invidious inferences regarding petitioner's credibility. From the knife incident evidence, the jury could draw the permissible inference that he had the motive and intent to harm Kimble.

Petitioner's prosecutorial misconduct claim fails, as he has not shown a violation of due process. Petitioner's claim that the trial court committed constitutional error by

5

admitting the evidence likewise fails. Petitioner has also not shown that he had a clearly established due process right to have the trial court give a limiting instruction on such evidence. Also, petitioner has not shown prejudice. Accordingly, petitioner's due process claims are DENIED.

### B. Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance by failing to object to the admission of evidence of his prior convictions and the prior bad act. Prior to trial, defense counsel moved to exclude evidence of petitioner's "prior bad acts" and "bad character evidence," yet did not specifically mention the knife incident. The state appellate court concluded that the knife incident was relevant to show motive and intent, and therefore any objection by defense counsel would have been futile (Ans., Ex. K at 32).

Petitioner's claim fails. Defense counsel had moved to exclude all such evidence. His not objecting at trial shows neither a deficient performance nor prejudice because it was reasonable to assume that any objection would be rejected by the trial court, which had previously denied his motion to exclude. It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). This assumption is bolstered by the fact that knife incident was directly relevant to the nature of his relationship with Kimble. Accordingly, petitioner's claim is DENIED.

### 2. Admission of Evidence of Kimble's Fear of Petitioner

Petitioner claims that his right to due process was violated by the admission of Phris's testimony that Kimble stated he was afraid of petitioner, and testimony by Kimble's father-in-law that he (Kimble) was afraid petitioner would kill him. Defense counsel did not object to this evidence. The state appellate court concluded that such evidence was relevant to rebut petitioner's defense that Kimble was the aggressor (Ans., Ex. K at 35).

Petitioner's claim is DENIED. Not only is the claim procedurally defaulted because counsel failed to object at trial, the evidence was relevant, and the jury could have drawn the reasonable inferences regarding petitioner's and Kimble's states of mind, s*ee Jammal*,

6

926 F.2d at 920.

Nor was its admission barred by the Confrontation Clause's ban on hearsay evidence. Nontestimonial hearsay such as that at issue here is not made inadmissible by the Confrontation Clause if the declarant is unavailable and the statement bears "adequate indicia of reliability," such as falling under a firmly rooted hearsay exception. *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Both elements are present here. Kimble's death rendered him unavailable, of course. Because the trial court instructed the jury to use the evidence only to establish Kimble's state-of-mind and to explain his actions, (Ans., Ex. K at 35 n.13), the trial court implicitly ruled that the statements fell under the well-established, *see United v. Arteaga*, 117 F.3d 388, 397 (9th Cir. 1997), state-of-mind hearsay exception. The trial court's determination was not unreasonable. Such evidence was not offered to show that Kimble in fact feared petitioner, but rather as circumstantial evidence of Kimble's state-of-mind, suggesting a lack of evidence that Kimble would act as an aggressor, and to explain his actions toward petitioner. Furthermore, any constitutional error in admitting the testimony was harmless. Petitioner's aggressiveness toward Kimble had been established by other evidence — such as through Marsha's testimony regarding petitioner's attack on her following an argument with Kimble — and his guilt of the crime itself was supported by the testimony of Phris Kimble, who witnessed the attack. On such a record, petitioner's claim is DENIED.

**3.  Double Jeopardy**

Petitioner claims that the Double Jeopardy Clause was violated by his retrial on the (A) murder charge, and (B) knife-use sentencing enhancement. Petitioner did not raise these claims on direct appeal.

**A.  Second Trial on the Murder Charge**

As noted above, petitioner was tried twice in 2005. The first jury convicted him on charges related to the liquor store robbery, acquitted him on the first-degree murder charge of Kimble, and could not reach a verdict as to any lesser-included murder offense, consequent to which the trial court declared a mistrial on the lesser included offenses of

7

first-degree murder. In the second trial, the jury found petitioner guilty of the second-degree murder of Kimble. According to petitioner, the first jury's acquittal on first-degree murder barred retrial on the second-degree murder charge.

The Double Jeopardy Clause bars successive prosecutions on charges of which a criminal defendant has been acquitted or convicted. *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006). It also bars successive prosecutions on an offense not charged in the original indictment once jeopardy has terminated for a lesser included or greater inclusive offense. *Brown v. Ohio*, 432 U.S. 161, 166 (1977); *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004). A retrial on charges on which a previous jury deadlocked does not, however, offend the Constitution. *See Richardson v. United States*, 468 U.S. 317, 324–35 (1984).

Petitioner's claim is without merit. The jury deadlocked on the lesser-included offenses of first-degree murder, and the trial court declared a mistrial on such charges. Jeopardy, then, never terminated as to the second-degree murder charge. Therefore, the second prosecution was not barred by the Double Jeopardy Clause. Petitioner's claim is DENIED.

**B.     Enhancement**

The first jury acquitted petitioner of first-degree murder, and found not true an enhancement allegation that petitioner used a knife in the commission of first-degree murder. The second jury found petitioner guilty of second-degree murder, and found true an enhancement that petitioner used a knife in the commission of the murder. Petitioner claims that the retrial on the enhancement charge violated the Double Jeopardy Clause.

Petitioner's claim fails because California's sentencing enhancement charges do not qualify as offenses under the Double Jeopardy Clause. *See May v. Sumner*, 622 F.2d 997, 999 (9th Cir. 1980). Accordingly, petitioner's claim is DENIED.

**4.     Raising Double Jeopardy Objections**

Petitioner's claim that defense counsel rendered ineffective assistance by failing to raise double jeopardy objections at trial fails. As just demonstrated, petitioner's double jeopardy claims lack merit. Under such circumstances, petitioner has not shown that any objection by defense counsel would have been meritorious or that there is a reasonable probably that the outcome of the proceeding would have been different, necessary components of a successful ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687–89 (1984).

**5.     Alleged Prosecutorial Misconduct**

   **A.     False Testimony**

Petitioner claims that the prosecutor committed misconduct by presenting the false testimony of Marsha Keaton. The relevant facts as follows. At the first trial, the prosecutor asked Marsha if she had seen petitioner carry an ice pick on occasions other than the time he attacked her with one. When Marsha testified that she had not, the prosecutor impeached her testimony with statements she had made to police. At the second trial, Marsha answered in the affirmative to the same question posed in the first trial. Petitioner claims that her testimony was false and the prosecutor knowingly presented it.

Petitioner's claim fails. It is clear from the facts just described that the prosecutor did not believe that Marsha was telling the truth at the first trial and believed that she was at the second. Such circumstances do not raise even the slightest inference that the prosecutor knowingly presented false testimony. Accordingly, petitioner's claim is DENIED.

   **B.     Knife Evidence**

Petitioner claims that the prosecutor committed misconduct by arguing to the jury that petitioner had used a knife in the commission of the offense. Petitioner bases this claim on the fact that the first jury, following its acquittal of petitioner on the first degree murder charge, found the knife use allegation not true. The first jury's finding, according to petitioner, barred the prosecutor from using any knife evidence in the second trial.

Petitioner's claim is without merit. In finding the allegation not true, the jury simply

9

1 concluded that petitioner had not used a knife in the commission of first-degree murder, not
2 that he did not use a knife at all. Such a jury finding was a technical one, necessitated by
3 their not guilty verdict on the free-standing charge of first-degree murder, rather than a
4 determination whether petitioner used a knife at all. Accordingly, petitioner's claim is
5 DENIED.

### 6. Motion to Sever

Petitioner claims that the trial court's denial of his pretrial motions to sever the unrelated murder and robbery charges in the first trial (A) caused him to suffer prejudice, and (B) "compromised" his Fifth Amendment rights. At trial,

> [petitioner] asserted his Fifth Amendment privilege to remain silent regarding the liquor store robbery; however, he waived the privilege and testified regarding the charges that he murdered Lawrence Kimble and assaulted Phris Keaton-Kimble, and he was impeached with the fact that he had previously sustained numerous felony convictions. At the conclusion of this trial, the jury convicted [petitioner] of all charges related to the robbery of Martell's Liquors

(Ans., Ex. K at 17). Petitioner testified that he killed Kimble in self-defense (*id.* at 14–15).

#### A. Prejudice

The state appellate court rejected petitioner's claim that the joinder of the charges resulted in prejudice. The evidence was not cross-admissible, the circumstances of the murder were not more inflammatory than those of the robbery, and there was no danger that a weak case was joined with a strong one:

> Despite [petitioner]'s focus on the brutal circumstances of the stabbing [of Kimble], the homicide in this case was not unusually inflammatory when compared to the callous beating of a vulnerable victim that occurred in the liquor store robbery. [Citation removed.] Nor does this appeal present the situation of a weak case joined with a strong one, or two weak cases thrown together in the hope that they would unfairly bolster each other; on the contrary, the state's evidence against [petitioner] in both cases was strong. Although prosecutors did not have DNA evidence to support the robbery case against [petitioner], as they did in the homicide case, they did have solid eyewitness testimony linking him to the crime. [Petitioner] was identified as the liquor store robber by the victim and two independent bystanders, one of whom testified at trial he had no doubt [petitioner] was the perpetrator

(*id.* at 19–20).

A federal court reviewing a state conviction under 28 U.S.C. 2254 does not concern

itself with state law governing severance or joinder in state trials. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). Nor is it concerned with the procedural right to severance afforded in federal trials. *Ibid.* Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Ibid.* In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000). Of particular importance in assessing prejudice are the "cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citations removed).

The state appellate court reasonably determined that petitioner did not suffer prejudice. First, there has been no showing that there was a danger of cross-admissibility. The crimes were entirely unrelated: the crimes were different in nature (robbery, murder), involved different victims, occurred on different days, involved different weapons and forms of attack, and were committed for different purposes. Second, there also has been no showing that there was a danger of spillover. Petitioner's acquittal on first degree murder and the jury's deadlocking on lesser included homicide offenses confirms this. Also, both crimes were brutal — petitioner beat the liquor store owner into unconsciousness, fracturing his skull and causing mild traumatic brain injury, (Ans., Ex. K at 4), and stabbed Kimble to death with a knife. Finally, the record supports the state court's conclusion that a strong case was not joined to a weak case. The robbery conviction was supported by the testimony of three eyewitnesses, including the victim, and videotape footage of the crime, while DNA evidence — petitioner's DNA profile matched that of blood found on a knife at the crime scene — and eyewitness testimony supported the murder conviction. On such a record, petitioner's claim is DENIED.

**B.     Fifth Amendment**

11

At the first trial, petitioner wanted to testify regarding the murder, in order to support his claim of self-defense, but did not want to testify regarding the robbery. According to petitioner, the joinder of the charges interfered with his right not to testify regarding the robbery because the prosecutor was able to impeach his testimony with evidence of his prior felony convictions. The state appellate court rejected this claim, concluding that petitioner had not shown that "a desire to avoid impeachment with prior convictions" — petitioner's sole basis for invoking his Fifth Amendment rights — "constitutes [ ] a compelling showing of prejudice." Furthermore, the jury instructions protected against prejudice by limiting the use of the prior conviction evidence to the jury's assessment of credibility, not evidence that petitioner committed the charged offenses (Ans., Ex. K at 22).

Petitioner has not shown that the state appellate court's adjudication of the claim was unreasonable. "There is no prejudicial constitutional violation unless 'the simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process.'" *Sandoval v. Calderon*, 241 F.3d 765 (9th Cir. 2000) (quoting *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991). As shown above, petitioner has not shown prejudice. The evidence of petitioner's guilt was strong in both cases, and the circumstances of both crimes were sufficiently brutal as to prevent prejudicial inflammation. This conclusion is supported by the fact that, despite the presentation of the prior conviction evidence, he was acquitted of the charge of first-degree murder and the jury deadlocked on any other homicide charges. Such verdicts do not show that the jury was prejudiced against petitioner, or was disposed to think of him as guilty or not credible because of his prior convictions. Accordingly, petitioner's claim is DENIED.

**7.     Speedy Trial**

1  Petitioner claims that his right to a speedy trial was violated by the 11-month delay
2  between his arrest and the preliminary hearing. The relevant facts are as follows:

> [Petitioner] was arrested for the robbery of Martell's Liquors on August 28, 2003, and a felony complaint alleging various charges related to the robbery was filed on September 3, 2003. Over the next several months, [petitioner] repeatedly and personally waived his rights to a speedy preliminary hearing and trial. Then, on July 29, 2004, [petitioner] was arrested for the Kimble murder. The prosecution later dismissed the robbery complaint after the grand jury returned an indictment covering both offenses.
>
> On the eve of trial, [petitioner] filed a motion to dismiss claiming his state constitutional right to a speedy trial and his federal right to due process were violated because the delay in proceeding to a preliminary hearing after the filing of the robbery complaint allowed the prosecutor to file charges against him for the Kimble homicide and join them with the robbery charges

(Ans., Ex. K at 24–25) (footnote omitted). Petitioner contended at trial he agreed to the delays only because the prosecutor misled him to believe that DNA testing was underway on the robbery evidence, evidence petitioner believed might exculpate him. The trial court concluded that the prosecutor did not act in bad faith, and denied petitioner's motion to dismiss (*id.* at 26).

The state appellate court rejected petitioner's speedy trial claim. Petitioner made no allegation or showing that he suffered "excessive pretrial incarceration" or that the delay "diminished his ability to defend against the robbery charges," such as the loss of evidence or the fading memories of witnesses. Also, the state court dismissed as "speculative" his allegation that the prosecutor intentionally delayed the robbery prosecution "in order to file additional charges . . . [or] to procure a prejudicial consolidation" (*id.* at 27–28).

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). No *per se* rule has been devised to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible "functional analysis," *Barker v. Wingo*, 407 U.S. 514, 522 (1972), and consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992); *Barker*, 407 U.S. at 530. None of the four factors is

13

either a necessary or sufficient condition for finding a speedy trial deprivation. *Barker*, 407 U.S. at 533. They are related factors and must be considered together with such other circumstances as may be relevant. *Ibid.* The Ninth Circuit considers the second factor, *i.e.*, the reason for the delay, the "focal inquiry." *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (citing *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739–40 (9th Cir. 1989)).

Petitioner has not shown that he is entitled to habeas relief on this claim, even though one factor weighs in his favor. As to the first factor, the length of the delay does not weigh heavily in petitioner's favor. Although a year's delay is considered "presumptively prejudicial," *see Doggett*, 505 U.S. at 651 n.1, the delay here fell short of that and the state appellate court's determination that it was not excessive was reasonable. While this factor perhaps weighs slightly in favor of petitioner, the second factor, the "focal inquiry," does not. The trial court determined that the prosecutor did not act in bad faith or mislead petitioner that more time was needed so that DNA testing could be conducted. Not only must federal habeas courts accord credibility determinations "the highest deference," *see Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986), such factual determinations are, under 28 U.S.C. 2254(e)(1), "presumed to be correct." The third factor decidedly does not weigh in petitioner's favor. Petitioner repeatedly waived his speedy trial rights over the 11-months, asserting them only on the eve of trial. Such circumstances do not indicate that petitioner timely and appropriately asserted his speedy trial right. As to the fourth factor, petitioner has not shown prejudice. As noted above, the evidence of his guilt was strong, and petitioner has not shown that the joinder of the charges deprived him of a fair trial, or that the joinder had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, petitioner's claim is DENIED.

**8.     Jury Trial Rights**

14

Petitioner claims that he was denied his right to a jury and to a unanimous verdict because the first trial court failed to conduct an adequate inquiry into allegations that a juror was sleeping on occasion. The relevant facts are as follows:

> After the jury returned verdicts in the guilt phase, trial continued before the same jury on August 17, 2005 regarding [petitioner]'s prior convictions. During a discussion between the court and counsel just before closing arguments, defense counsel asked to "put on the record that Juror Number 3 was asleep throughout a good portion of this trial." Counsel asked that he be replaced with an alternate juror for deliberations. Noting that counsel had mentioned once during the presentation of the prosecutor's case that this juror had "dozed off," the court observed it immediately[,] took note of the issue and asked everyone in the jury to take a break and stretch. [Footnote omitted.] The court also stated it had not noticed that the juror was inattentive for any extended period of time. When the prosecutor disputed whether the juror had fallen asleep, defense counsel responded, "I saw Juror Number 3 with [his] head leaned back against the wall, eyes closed and mouth wide open for at least five minutes . . ." The court agreed that the juror appeared to have dozed off but stated, "I certainly didn't notice for that length of time." The court denied the motion to replace Juror Number 3, and the matter proceeded to verdict on [petitioner]'s prior convictions.
>
> [Petitioner] raised the "sleeping juror" issue again in his motion for a new trial. In this motion, defense counsel stated he had brought incidents of sleeping to the court's attention on three separate occasions. According to counsel, the first time the court responded by urging jurors to take a break, the second time the juror woke up as soon as counsel alerted the court to the sleeping, and the third time the court disputed that the juror was sleeping and denied the defense's motion to replace him. In the motion, defense counsel also stated that Juror Number 11 (the one "holdout" juror who refused to convict [petitioner] of second degree murder) told him "Juror # 3 admitted during deliberations that he had fallen asleep during large portions of the trial." Counsel submitted a declaration in support of the new trial motion, but his declaration made no mention of any juror sleeping incidents witnessed by himself or anyone else. At the hearing on the motion, the court recalled that the sleeping incidents counsel described occurred very close together in time — on only one or two days over the course of a six-week trial — and did not pose an ongoing problem during the trial. Moreover, with respect to the third alleged incident, the court simply did not think the juror was asleep. The motion was denied

(Ans., Ex. K at 36–27). The state appellate court concluded that the trial court did not abuse its discretion in denying the motion, and rejected petitioner's claim:

> Defense counsel did not raise any complaint about a juror sleeping until just before deliberations in the trial on prior convictions, and at that time he discussed only one specific incident, which had occurred weeks earlier during the prosecution's case. Upon noticing that the juror had dozed off in the darkened courtroom, the trial court responded appropriately by calling for an immediate break and urging jurors to stretch. No other incidents were mentioned on the record until defense counsel described two additional

> episodes months later in [petitioner]'s motion for new trial, and the court disputed one of these had even happened. This record amply supports the trial court's conclusion that Juror Number 3's sleeping was not a recurring problem during trial. [Citation removed.]
>
> [Petitioner] also argues the trial court erred in denying his motion for a new trial due to the fact of a juror sleeping; however, he presented no evidence to support this allegation of misconduct. In the new trial motion, defense counsel merely asserted that additional incidents of sleeping occurred, but counsel's sworn declaration made no mention of any such incidents he may have observed. Moreover, although counsel also claimed Juror Number 11 told him that Juror Number 3 had reported sleeping, he did not submit a declaration from Juror Number 3 to substantiate this claim. He did not even attempt to submit a hearsay declaration from Juror Number 11 on the issue, nor did he mention in his own declaration what Juror Number 11 had purportedly told him. Accordingly, with the exception of only two brief instances observed by the court, [petitioner]'s claim that a juror was sleeping was entirely uncorroborated

(*id.* at 38–39).

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. If juror misconduct occurred, petitioner bears the onus of demonstrating that the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Only those reasons which affect a juror's impartiality can be said to affect the fairness of the trial. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). Due process requires a jury capable and willing to deliberate solely based upon the evidence presented, and a trial judge watchful to prevent prejudicial occurrences and to assess their effects if they happen. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A federal habeas court must accord the highest deference to a trial court's credibility determination. *See Knaubert*, 791 F.2d at 727.

The state appellate court reasonably determined that petitioner's jury trial rights were not violated. The record reflects that the trial judge held a hearing on the matter, and rendered a decision that was fairly supported by the record. More specifically, the allegations were not supported by any evidence, not even an affidavit from Juror 11 who had asserted that Juror 3 had admitted sleeping through large portions of the trial. Petitioner has not presented any evidence to overcome the presumption of correctness a federal habeas court must accord a trial court's factual determinations. Petitioner, then, has

16

not shown that the juror's alleged sleep behavior rose to the level of a constitutional violation. Furthermore, even if one presumed petitioner's allegations to be true, he has not shown that Juror 3 was inattentive at essential portions of the trial and therefore was not able fairly to consider the evidence. *See United States v. Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983). Accordingly, petitioner's claim is DENIED.

**9.     Assistance of Counsel**

Petitioner claims that he received ineffective assistance of trial and appellate counsel who both failed to obtain the transcripts needed to substantiate his claim that his speedy trial rights were violated. Petitioner's claim lacks merit. First, petitioner fails to identify what *specific* information the transcripts would reveal. Merely alleging that the transcripts would have supported his motion is insufficient. Failure to identify such information is a failure to show that counsel's performance was deficient, or that the alleged deficiency resulted in prejudice. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997). Second, defense counsel had no need for such transcripts as the factual allegations underlying petitioner's speedy trial motion were not in dispute. Third, the trial court, after reviewing the record, concluded that the prosecutor did not act in bad faith. As noted above, such credibility determinations must be accorded the highest deference. *See Knaubert*, 791 F.2d at 727. As the record supports the conclusion that there was no bad faith by the prosecutor, petitioner has failed to show prejudice, a necessary component of a successful ineffective assistance claim. *Strickland*, 466 U.S. at 687–89. Accordingly, petitioner's claim is DENIED.

**10.     Prosecutorial Misconduct**

Petitioner claims that the prosecutor committed misconduct in representing that they were going to conduct DNA testing of certain evidence and then failing to do so. Petitioner's claim fails. The trial court concluded that the prosecutor did not act in bad faith and did not engage in misrepresentation. This order must defer to the trial court's factual determination. Accordingly, petitioner's claim is DENIED.

**CONCLUSION**

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: January 11, 2012

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE